FILED
SEP 16 2025
U.S. DISTRICT COURT- NDWV
MARTINSBURG, WV 25401

UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF WEST VIRGINIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| v. | Criminal No. 5:25cr34 |
| PAUL J. HARRIS, | Violations:<br>18 U.S.C. § 1341<br>18 U.S.C. § 1343<br>18 U.S.C. § 1957 |
| Defendant. | |

# INDICTMENT

The Grand Jury charges that:

## GENERAL ALLEGATIONS

At all times relevant to this Indictment, on or about the dates stated below:

### The Defendant

1. The defendant, **PAUL J. HARRIS**, was a resident of Wheeling, West Virginia, and was a lawyer admitted to the West Virginia State Bar in 1987, who practiced law at Harris Law Offices, located at 32 Fifteenth Street, Wheeling, West Virginia 26003 ("Harris Law Offices").

2. All lawyers who practiced in the State of West Virginia were required to comply with the West Virginia Rules of Professional Conduct.

3. Rule 1.15 of the West Virginia Rules of Professional Conduct required **PAUL J. HARRIS** to hold property of clients that was in his possession in connection with a representation separate from his own property. Specifically, the rule required **PAUL J. HARRIS** to keep funds, including funds to pay his legal fees and funds to be used by him to pay expenses of the representation, in a separate account designated as a client's trust account, which was an Interest on Lawyers Trust Accounts ("IOLTA account"). The rule permitted **PAUL J. HARRIS** to

1

withdraw legal fees and expenses paid in advance but only as the fees were earned or expenses were incurred. The rule permitted **PAUL J. HARRIS** to deposit his own funds in his IOLTA account for the sole purpose of paying bank service charges on that account, but only in an amount necessary for that purpose.

4.  **PAUL J. HARRIS** had an IOLTA account, a law firm operating account, and several personal accounts at a financial institution headquartered in Wheeling, West Virginia.

## The Clients

5.  CLIENT-1 was a client for whom **PAUL J. HARRIS** agreed to hold in trust hundreds of thousands of dollars of the approximately $600,000 that CLIENT-1 had inherited and the approximately $100,000 of proceeds from the sale of real property that CLIENT-1 had inherited. In or about at least April 2014, CLIENT-1 began to transfer the inheritance funds to **PAUL J. HARRIS** because **PAUL J. HARRIS** told CLIENT-1 that CLIENT-1 had potential civil liability arising from an April 2014 vehicle accident involving CLIENT-1's adult son that resulted in a fatality. **PAUL J. HARRIS** deposited these funds in his IOLTA account. In or about at least January 2019, CLIENT-1 began to request the inheritance funds from **PAUL J. HARRIS** so that CLIENT-1 could move the funds to an account to be handled by a financial advisor. From in or about August 2019 to in or about April 2021, **PAUL J. HARRIS** gave CLIENT-1 checks totaling $370,000.

6.  CLIENT-2 was a client **PAUL J. HARRIS** agreed to represent in a federal criminal tax investigation. In or about October 2017 and November 2017, CLIENT-2 made check payments to **PAUL J. HARRIS** totaling $50,000 because **PAUL J. HARRIS** told CLIENT-2 that he needed this amount of money as a retainer to get started on his representation of CLIENT-2.

7.      CLIENT-3 was a client for whom **PAUL J. HARRIS** agreed to handle the first-party and third-party claims arising from a mine subsidence dispute, on a contingency fee basis, and to assist CLIENT-3 in curing income tax and child support delinquencies, for no additional fee. In or about November 2020, CLIENT-3 transferred $300,000 to the IOLTA account of **PAUL J. HARRIS** to be used to cure the income tax and child support delinquencies. In or about March 2021, as part of a settlement of the first-party claim, an insurance company issued a check of $200,000, made payable to **PAUL J. HARRIS** and CLIENT-3, which was deposited in the IOLTA account of **PAUL J. HARRIS**. In or about April 2021, CLIENT-3 transferred over $600,000 to the IOLTA account of **PAUL J. HARRIS** to be used to cure the income tax and child support delinquencies.

8.      CLIENT-4 was a member of a class of plaintiffs that **PAUL J. HARRIS** agreed to represent in a civil action filed in or about April 2021. In or about November 2022, as part of a settlement, the defendant in the civil action issued checks payable to the plaintiffs totaling $3,500,000, all of which were deposited in the IOLTA account of **PAUL J. HARRIS**, including a check of $1,000,000 made payable to CLIENT-4.

## COUNTS ONE THROUGH TWENTY-FOUR

(Mail Fraud and Wire Fraud)

1. The General Allegations of this Indictment are re-alleged and fully incorporated herein by reference.

## THE SCHEME

2. Beginning in or about at least April 2014, and continuing to on or about at least May 22, 2025, in Ohio County, in the Northern District of West Virginia, and elsewhere, the defendant, **PAUL J. HARRIS**, devised and intended to devise a scheme and artifice to defraud and obtain money from clients by means of materially false and fraudulent pretenses, representations, and promises, and for the purpose of executing the scheme and artifice to defraud and obtain money from his clients, did knowingly deliver and cause to be delivered by mail according to the direction thereon, a matter or thing, and did knowingly transmit and cause to be transmitted in interstate and foreign commerce, by means of wire communications, certain signs and signals.

3. The scheme involved the following manner and means, among others.

4. **PAUL J. HARRIS** would cause clients to send to him or to entrust him with substantial amounts of money, including advance payments of fees, inheritance funds, settlement funds, and property sale proceeds, and including money that he caused the clients to part with through materially false and fraudulent pretenses, representations, and promises, including but not limited to representations regarding how he would handle the money and for what purpose he would use the money.

5. **PAUL J. HARRIS** would commingle client funds with non-client funds by moving client funds from his IOLTA account to his law firm operating account, where he converted the client funds to his own use to fund payments that were unrelated to the representation of the client.

6. **PAUL J. HARRIS** would use some of the commingled funds of one client to make payments that he owed to another client to conceal his misuse of client funds and to lull and forestall action by his clients and others.

7. **PAUL J. HARRIS** would make false and misleading statements to his clients and to others and would make statements to his clients and to others that omitted materially important information about his use of client funds, to conceal his misuse of client funds and to lull and forestall action by his clients and others, including statements made at or from Harris Law Offices.

8. The scheme involved the following acts, among others, which were committed and caused to be committed in the Northern District of West Virginia and elsewhere.

**CLIENT-1:**

9. From on or about April 29, 2014, to on or about July 11, 2014, **PAUL J. HARRIS** deposited and caused to be deposited in his IOLTA account checks totaling $575,000 from CLIENT-1.

10. By at least in or about August 2014, **PAUL J. HARRIS** had commingled and converted to his own use the client funds of CLIENT-1.

11. In or about March 2019, **PAUL J. HARRIS** had a meeting with CLIENT-1 at Harris Law Offices, during which he omitted that he had expended the client funds of CLIENT-1.

12. On or about August 31, 2019, **PAUL J. HARRIS** used and caused to be used funds not comprised of the client funds of CLIENT-1 to fund a check of $100,000, written on his law firm operating account, made payable to CLIENT-1.

13. On or about September 14, 2019, **PAUL J. HARRIS** used and caused to be used funds not comprised of the client funds of CLIENT-1 to fund a check of $100,000, written on his law firm operating account, made payable to CLIENT-1.

**CLIENT-2:**

14. On or about October 20, 2017, **PAUL J. HARRIS** deposited and caused to be deposited in his IOLTA account a check of $25,000 from CLIENT-2.

15. From on or about October 20, 2017, to on or about November 1, 2017, **PAUL J. HARRIS** transferred and caused to be transferred approximately $25,000 of CLIENT-2's money from his IOLTA account to his law firm operating account.

16. By on or about November 1, 2017, **PAUL J. HARRIS** had expended and caused to be expended CLIENT-2's money from his law firm operating account, including to fund payments not related to his representation of CLIENT-2.

17. In or about mid-November 2017, **PAUL J. HARRIS** deposited and caused to be deposited in his IOLTA account a check of $25,000 from CLIENT-2.

18. On or about December 28, 2020, **PAUL J. HARRIS** shipped and caused to be shipped, from Harris Law Offices to an attorney of CLIENT-2, a purported copy of the file of CLIENT-2, which included, among other items, 131 pages of proposed jury instructions and an itemized billing statement claiming over $44,000 in fees and expenses, including $23,000 for legal research.

19. On or about February 21, 2024, in an administrative proceeding, **PAUL J. HARRIS** gave false and misleading sworn testimony that he only transferred CLIENT-2's funds from his IOLTA account as part of earning his legal fee for the criminal defense of CLIENT-2.

**CLIENT-3:**

*Transfer of $300,000*

20.     On or about November 30, 2020, **PAUL J. HARRIS** caused CLIENT-3 to wire $300,000 to his IOLTA account.

21.     From on or about November 30, 2020, to on or about December 15, 2020, **PAUL J. HARRIS** transferred and caused to be transferred more than approximately $150,000 of CLIENT-3's money from his IOLTA account to his law firm operating account.

22.     On or about December 11, 2020, **PAUL J. HARRIS** used and caused to be used CLIENT-3's money to fund a check of $20,000, written on his law firm operating account, made payable to CLIENT-1.

*First-Party Mine Subsidence Claim Settlement Proceeds of $200,000*

23.     On or about March 22, 2021, **PAUL J. HARRIS** deposited and caused to be deposited in his IOLTA account a $200,000 check from an insurance company, made payable to **PAUL J. HARRIS** and CLIENT-3, as part of the settlement of the first-party claim.

24.     From on or about March 23, 2021, to on or about March 28, 2021, **PAUL J. HARRIS** transferred and caused to be transferred approximately $120,000 of the $200,000 of insurance proceeds from his IOLTA account to his law firm operating account, at least part of which proceeds were due to be paid to CLIENT-3.

25.     On or about March 26, 2021, **PAUL J. HARRIS** used and caused to be used money that was due to CLIENT-3 from the insurance proceeds to fund a check of $50,000, written on his law firm operating account, made payable to CLIENT-1.

### *Real Property Sale Proceeds of More Than $600,000*

26. On or about April 14, 2021, **PAUL J. HARRIS** caused CLIENT-3 to wire $611,581.04 to his IOLTA account, representing the proceeds of the sale of real properties of CLIENT-3, which CLIENT-3 intended to be used to pay state and federal income tax delinquencies of CLIENT-3 and CLIENT-3's family, and child support delinquencies of CLIENT-3's son.

27. From on or about April 14, 2021, to on or about May 25, 2021, **PAUL J. HARRIS** transferred and caused to be transferred over $500,000 of CLIENT-3's property sale proceeds from his IOLTA account to his law firm operating account.

28. On or about April 15, 2021, **PAUL J. HARRIS** used and caused to be used CLIENT-3's money to fund a check of $100,000, written on his law firm operating account, made payable to CLIENT-1.

29. From on or about April 19, 2021, to on or about April 28, 2021, **PAUL J. HARRIS** used and caused to be used CLIENT-3's money to fund transfers totaling approximately $70,000 from his law firm operating account to a brokerage account in his name, which he had opened on or about March 29, 2021.

30. From on or about April 20, 2021, to on or about May 27, 2021, **PAUL J. HARRIS** used and caused be used CLIENT-3's money to fund transfers totaling over $70,000 from his law firm operating account to a digital currency exchange account in his name, which he had opened on or about April 18, 2021.

31. On or about April 26, 2021, **PAUL J. HARRIS** used and caused to be used CLIENT-3's money to fund payments totaling over $70,000 from his law firm operating account

to the account for the loan on the real property comprising Harris Law Offices and two other business loan accounts.

32. On or about June 16, 2021, **PAUL J. HARRIS** sent and caused to be sent an email to CLIENT-3's son, which attached a letter representing that **PAUL J. HARRIS** would soon be filing the CLIENT-3 family's delinquent tax returns, and which omitted that he had already converted to his own use hundreds of thousands of dollars that CLIENT-3 had intended him to use to pay the outstanding tax liabilities.

33. On or about July 19, 2021, **PAUL J. HARRIS** sent and caused to be sent an email to CLIENT-3's son, which represented that **PAUL J. HARRIS** was handling CLIENT-3's son's child support delinquencies, and which omitted that he had already converted to his own use hundreds of thousands of dollars, part of which CLIENT-3 had intended to be used to pay the outstanding child support liabilities.

34. On or about July 22, 2021, **PAUL J. HARRIS** sent and caused to be sent an email to CLIENT-3's son, which represented that he intended to provide an accounting of his use of CLIENT-3's money at a meeting the next day, and which omitted that he had already converted to his own use nearly all of CLIENT-3's money.

35. On or about January 31, 2022, **PAUL J. HARRIS** sent and caused to be sent a text message to CLIENT-3's son, which represented that the delinquent tax returns had been completed and that the penalties and interest were being calculated, and which omitted that he had already fully converted to his own use the money that CLIENT-3 had intended to be used to pay the outstanding tax liabilities.

36. On or about May 23, 2022, **PAUL J. HARRIS** represented falsely in a court filing that the insurance proceeds associated with CLIENT-3's first-party claim had been used to pay the outstanding tax liabilities.

37. In or about August 2022, **PAUL J. HARRIS** represented falsely to CLIENT-3's son that he had paid the outstanding tax liabilities by producing and causing to be produced to CLIENT-3's son, at Harris Law Offices, a copy of CLIENT-3's file, which included copies of state and federal income tax returns and copies of payment checks dated between March 29, 2022, and April 30, 2022.

38. On or about November 11, 2022, **PAUL J. HARRIS** represented falsely at a mediation that he had used CLIENT-3's money to pay the outstanding tax liabilities.

39. On or about June 6, 2023, **PAUL J. HARRIS** represented in a court filing that CLIENT-3 had been provided with records of federal tax payments, but he omitted that the payments had not been made at the time the records were provided to CLIENT-3 and had only since been made in or around January 2023 and March 2023 with the funds of other clients.

40. On or about August 14, 2023, in a filing in an administrative proceeding, **PAUL J. HARRIS** represented falsely that he used the $300,000, received from CLIENT-3 on or about November 30, 2020, to pay the outstanding tax liabilities.

41. On or about August 14, 2023, in a filing in an administrative proceeding, **PAUL J. HARRIS** represented falsely that he used the balance of his IOLTA account on March 31, 2021, to pay the outstanding tax liabilities.

42. On or about February 21, 2024, in an administrative proceeding, **PAUL J. HARRIS** gave false and misleading sworn testimony that he only transferred the funds he received from CLIENT-3 in November 2020 from his IOLTA account as part of earning his legal fee.

43. On or about February 21, 2024, in an administrative proceeding, **PAUL J. HARRIS** gave false and misleading sworn testimony that he kept CLIENT-3's part of the first-party claim proceeds in his IOLTA account, rather than distributing those funds to CLIENT-3, so that he could apply the funds to payments of CLIENT-3's outstanding tax liabilities or to his legal fee for the potential criminal defense of CLIENT-3.

44. On or about February 21, 2024, in an administrative proceeding, **PAUL J. HARRIS** gave false and misleading sworn testimony that he mailed and caused to be mailed the payment checks for the outstanding federal income taxes, penalties, and interest of CLIENT-3 and family, to the Internal Revenue Service on or about the dates the checks were drafted in or about March 2022 and April 2022.

45. On or about February 21, 2024, in an administrative proceeding, **PAUL J. HARRIS** gave false and misleading sworn testimony that he did not submit any payments to the Internal Revenue Service on behalf of CLIENT-3 and family in 2023.

**CLIENT-4:**

46. On or about November 29, 2022, **PAUL J. HARRIS** deposited and caused to be deposited in his IOLTA account seven checks, totaling $2,750,000, from the civil action defendant, each made payable to one of the class action plaintiffs, including a $1,000,000 check, made payable to CLIENT-4.

47. From on or about November 30, 2022, to on or about January 23, 2023, **PAUL J. HARRIS** transferred and caused to be transferred over $1,000,000 of the class action settlement funds from his IOLTA account to his law firm operating account, which had a negative balance prior to receipt of the first transfer of these funds.

48. From on or about January 23, 2023, to on or about January 27, 2023, **PAUL J. HARRIS** used and caused to be used the class action settlement funds to fund six checks, dated March 29, 2022, totaling approximately $169,000, written on his law firm operating account, made payable to the U.S. Treasury, to pay outstanding federal income taxes and, purportedly, penalties and interest for the daughter of CLIENT-3 for tax years 2015 through 2020.

49. From on or about January 30, 2023, to on or about March 21, 2023, **PAUL J. HARRIS** transferred and caused to be transferred approximately $600,000 of the class action settlement funds from his IOLTA account to his law firm operating account.

50. From on or about March 7, 2023, to on or about March 28, 2023, **PAUL J. HARRIS** used and caused to be used the class action settlement funds to fund eight checks, dated April 9, 2022, and April 16, 2022, totaling approximately $500,000, written on his law firm operating account, made payable to the U.S. Treasury, to pay outstanding federal income taxes and, purportedly, penalties and interest for CLIENT-3 for tax years 2010 through 2018.

51. On or about August 16, 2023, in a meeting at Harris Law Offices, **PAUL J. HARRIS** represented to CLIENT-4 that he was working on negotiating a settlement of a subrogation claim from a health insurance company on CLIENT-4's class action settlement proceeds, but he omitted that he no longer had all the class action settlement proceeds due to CLIENT-4.

52. On or about October 24, 2023, in a meeting at Harris Law Offices, **PAUL J. HARRIS** represented to CLIENT-4 that he was continuing to work on the subrogation claim from a health insurance company on CLIENT-4's class action settlement proceeds, but he omitted that he no longer had all the class action settlement proceeds due to CLIENT-4.

53. On or about December 12, 2023, **PAUL J. HARRIS** provided and caused to be provided to CLIENT-4, at Harris Law Offices, a document, which falsely and fraudulently claimed that his law firm incurred expenses of over $350,000 in representing CLIENT-4 and the other plaintiffs in the class action litigation.

54. On or about March 15, 2025, in a meeting at Harris Law Offices, **PAUL J. HARRIS** represented to CLIENT-4 that a person listed on the expense document provided to CLIENT-4 on or about December 12, 2023, was an expert, but he omitted that the true expense for this item was $5,000, not the $26,000 figure on the expense document.

55. On or about April 11, 2025, **PAUL J. HARRIS** falsely and fraudulently represented to the guardian ad litem for CLIENT-4's minor son that his law firm had incurred $26,000 of expenses for a specified expert.

56. On or about May 22, 2025, in response to a court order directing him to deposit the remaining settlement proceeds of CLIENT-4 with a general receiver, **PAUL J. HARRIS** deposited and caused to be deposited approximately $350,000, which was not comprised of CLIENT-4's class action settlement proceeds.

## MAILINGS

57. On or about the dates listed in the chart below, in Ohio County, in the Northern District of West Virginia and elsewhere, the defendant, **PAUL J. HARRIS**, for the purpose of executing and attempting to execute the scheme and artifice to defraud and obtain money from clients by means of materially false and fraudulent pretenses, representations, and promises, knowingly delivered and caused to be delivered by mail according to the direction thereon, the following matters and things, as more specifically described below, each execution and attempted execution constituting a separate violation:

| COUNT | DATE | DESCRIPTION OF MAILING |
|---|---|---|
| 1 | 12/28/2020 | Case file of CLIENT-2 mailed to attorney of CLIENT-2 |
| 2 | 03/19/2021 | Check of $200,000 from an insurance company made payable to **PAUL J. HARRIS** and CLIENT-3 mailed to **PAUL J. HARRIS** |
| 3 | 11/23/2022 | Check of $1,000,000 from the civil action defendant made payable to CLIENT-4 mailed to **PAUL J. HARRIS** |
| 4 | 01/23/2023 | Check of $45,718.65 made payable to the U.S. Treasury for the taxes of the daughter of CLIENT-3 mailed to the Internal Revenue Service |
| 5 | 01/24/2023 | Check of $26,208.19 made payable to the U.S. Treasury for the taxes of the daughter of CLIENT-3 mailed to the Internal Revenue Service |
| 6 | 01/24/2023 | Check of $22,287.14 made payable to the U.S. Treasury for the taxes of the daughter of CLIENT-3 mailed to the Internal Revenue Service |
| 7 | 01/24/2023 | Check of $20,503.51 made payable to the U.S. Treasury for the taxes of the daughter of CLIENT-3 mailed to the Internal Revenue Service |
| 8 | 01/24/2023 | Check of $23,935.11 made payable to the U.S. Treasury for the taxes of the daughter of CLIENT-3 mailed to the Internal Revenue Service |
| 9 | 01/27/2023 | Check of $30,442.59 made payable to the U.S. Treasury for the taxes of the daughter of CLIENT-3 mailed to the Internal Revenue Service |
| 10 | 03/07/2023 | Check of $54,488.55 made payable to the U.S. Treasury for the taxes of CLIENT-3 mailed to the Internal Revenue Service |
| 11 | 03/07/2023 | Check of $49,046.90 made payable to the U.S. Treasury for the taxes of CLIENT-3 mailed to the Internal Revenue Service |
| 12 | 03/08/2023 | Check of $65,520.18 made payable to the U.S. Treasury for the taxes of CLIENT-3 mailed to the Internal Revenue Service |
| 13 | 03/09/2023 | Check of $66,072.53 made payable to the U.S. Treasury for the taxes of CLIENT-3 mailed to the Internal Revenue Service |
| 14 | 03/10/2023 | Check of $66,359.48 made payable to the U.S. Treasury for the taxes of CLIENT-3 mailed to the Internal Revenue Service |
| 15 | 03/16/2023 | Check of $60,276.55 made payable to the U.S. Treasury for the taxes of CLIENT-3 mailed to the Internal Revenue Service |

| 16 | 03/29/2023 | Check of $77,652.86 made payable to the U.S. Treasury for the taxes of CLIENT-3 mailed to the Internal Revenue Service |

All in violation of Title 18, United States Code, Section 1341.

## WIRES

58. On or about the dates listed in the chart below, in Ohio County, in the Northern District of West Virginia and elsewhere, the defendant, **PAUL J. HARRIS**, for the purpose of executing and attempting to execute the scheme and artifice to defraud and obtain money from clients by means of materially false and fraudulent pretenses, representations, and promises, knowingly transmitted and caused to be transmitted by means of wire communications in interstate and foreign commerce, the following writings and signals, as more specifically described below, each execution and attempted execution constituting a separate violation:

| COUNT | DATE | DESCRIPTION OF WIRE |
|---|---|---|
| 17 | 11/30/2020 | Wire of $300,000 from CLIENT-3 to **PAUL J. HARRIS'** IOLTA account, which involved a wire that originated outside the State of West Virginia and terminated in Wheeling, West Virginia |
| 18 | 12/14/2020 | Automated Clearing House disbursement of $6,800 from **PAUL J. HARRIS'** law firm operating account to a personal credit card account, which involved a wire that originated in Wheeling, West Virginia and traveled outside the State of West Virginia |
| 19 | 04/14/2021 | Wire of $611,581.04 from CLIENT-3 to **PAUL J. HARRIS'** IOLTA account, which involved a wire that originated outside the State of West Virginia and terminated in Wheeling, West Virginia |
| 20 | 04/19/2021 | Automated Clearing House disbursement of $25,000 from **PAUL J. HARRIS'** law firm operating account to a brokerage account in his name, which involved a wire that originated in Wheeling, West Virginia and traveled outside the State of West Virginia |

| 21 | 05/27/2021 | Automated Clearing House disbursement of $35,000 from **PAUL J. HARRIS'** law firm operating account to a digital currency exchange account in his name, which involved a wire that originated in Wheeling, West Virginia and traveled outside the State of West Virginia |
| 22 | 06/16/2021 | Email of a letter from **PAUL J. HARRIS** to the son of CLIENT-3 regarding the filing of tax returns, which involved a wire that originated in Wheeling, West Virginia and traveled outside the State of West Virginia |
| 23 | 07/19/2021 | Email from **PAUL J. HARRIS** to the son of CLIENT-3 regarding the child support delinquencies, which involved a wire that originated in Wheeling, West Virginia and traveled outside the State of West Virginia |
| 24 | 07/22/2021 | Email from **PAUL J. HARRIS** to the son of CLIENT-3 regarding an accounting of CLIENT-3's money, which involved a wire that originated in Wheeling, West Virginia and traveled outside the State of West Virginia |

All in violation of Title 18, United States Code, Section 1343.

## COUNTS TWENTY-FIVE THROUGH TWENTY-NINE

(Unlawful Monetary Transactions)

1. The General Allegations and Counts One through Twenty-Four of this Indictment are re-alleged and incorporated as though fully set forth herein.

2. On or about the dates set forth in the chart below, in Ohio County, in the Northern District of West Virginia, and elsewhere, the defendant, **PAUL J. HARRIS**, did knowingly engage in a monetary transaction through and to a financial institution, affecting interstate commerce, in criminally derived property of a value greater than $10,000, that is, the defendant, **PAUL J. HARRIS**, made and caused to be made the following monetary transactions in or affecting interstate commerce by or through a financial institution with funds having been derived from a specified unlawful activity, specifically wire fraud in violation of Title 18, United States Code, Section 1343:

| COUNT | DATE | DESCRIPTION OF MONETARY TRANSACTION |
|---|---|---|
| 25 | 04/19/2021 | Transfer of $25,000 from **PAUL J. HARRIS'** law firm operating account to a brokerage account in his name by Automated Clearing House disbursement |
| 26 | 04/22/2021 | Transfer of $30,000 to J.W. by check written on **PAUL J. HARRIS'** law firm operating account |
| 27 | 04/26/2021 | Transfer of approximately $53,000 from **PAUL J. HARRIS'** law firm operating account to the account for the loan on the property comprising his law firm by electronic transfer |
| 28 | 04/30/2021 | Transfer of approximately $28,000 to a local school by check written on **PAUL J. HARRIS'** law firm operating account |
| 29 | 05/27/2021 | Transfer of $35,000 from **PAUL J. HARRIS'** law firm operating account to a digital currency exchange account in his name by Automated Clearing House disbursement |

All in violation of Title 18, United States Code, Section 1957.

## FORFEITURE ALLEGATION

1.  Pursuant to Title 28, United States Code, Section 2461(c), Title 18, United States Code, Sections 981(a)(1)(C), 982(a)(1), 1956(c)(7)(A), 1961(1), and Title 21, United States Code, Section 853, the government will seek the forfeiture of property as part of the sentence imposed in this case; that is,

   a. the forfeiture of any property, real or personal, which constitutes or is derived from proceeds traceable to a violation of Title 18, United States Code, Sections 1341 or 1343, including a money judgment for the amount of such proceeds; and

   b. the forfeiture of any property, real or personal, involved in a violation of Title 18, United States Code, Section 1957, and any property traceable to such property, including a money judgment for the amount of such property involved, and the real property known as Harris Law Offices, located at 32 Fifteenth Street, Wheeling, West Virginia 26003.

2.  Pursuant to Title 28, United States Code, Section 2461(c), and Title 18, United States Code, Section 982(b)(1), the government will seek forfeiture of substitute property up to the value of property subject to direct forfeiture that is not available for forfeiture on account of any act or omission contemplated by Title 21, United States Code, Section 853(p)(1).

A true bill,

/s/
Foreperson

/s/ Randolph J. Bernard
RANDOLPH J. BERNARD
Acting United States Attorney

Jarod J. Douglas
Assistant United States Attorney

Jennifer T. Conklin
Assistant United States Attorney

Morgan S. McKee
Assistant United States Attorney

Case 5:25-cr-00034-JPB-JPM   Document 1   Filed 09/16/25   Page 19 of 19   PageID #: 19