FILED
OCT 24 2025
U.S. DISTRICT COURT- WVND
WHEELING, WV 26003

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

UNITED STATES OF AMERICA,

v.

PAUL J. HARRIS,

Defendant.

Case No.: 5:25-CR-34

## DEFENDANT'S REPLY IN SUPPORT OF MOTION TO DISMISS INDICTMENT FOR OUTRAGEOUS GOVERNMENT MISCONDUCT [DOC 85]

### I. INTRODUCTION

The Government's response [DOC 88] fails to cure or deny the core due process violation at the heart of this motion: Count 16 of the indictment rests on a tax payment that the Government now concedes was applied to Defendant's personal tax account. Whether the result of deliberate coordination, reckless disregard, or gross negligence, this misapplication of funds fundamentally undermines the integrity of both the investigation and the prosecution.

The Government concedes that (1) the $77,652.86 check was initially credited to a "Paul D. Harris," and (2) later reassigned to the Defendant's 2021 personal tax account, yet offers no plausible explanation for how such an improbable reassignment could have occurred. Merely asserting that "civil IRS employees misapplied a payment" does not extinguish the constitutional concern—particularly when the prosecution knowingly relied on that false transaction to obtain and sustain an indictment.

-1-

## II. THE GOVERNMENT'S RESPONSE CONFIRMS, RATHER THAN REFUTES, OUTRAGEOUS CONDUCT

### A. The Use of False Evidence Before the Grand Jury

The Government admits that by July 17, 2025, it possessed IRS records showing that the payment had been applied to Defendant's personal tax account—months before the grand jury returned the indictment. Its assertion that "no one from the prosecution team had noticed" the reassignment until October 17, 2025 is tantamount to an admission of reckless disregard for truth. Prosecutors have an affirmative duty to verify the factual accuracy of evidence presented to the grand jury.

Presenting or maintaining a charge premised on objectively false financial data—especially when the Government already held records proving the error—constitutes misconduct sufficient to "shock the conscience." *United States v. Russell*, 411 U.S. 423 (1973); *Rochin v. California*, 342 U.S. 165 (1952).

### B. The 1040-V Voucher Eliminates the Possibility of "Mistaken" Application

The Government's "clerical error" narrative collapses under basic IRS procedure. The $77,652.86 check was accompanied by an IRS Form 1040-V identifying CLIENT-3 as the taxpayer to whom the payment should be applied. The Defendant's name, Social Security number, and personal account information would not have been attached to that voucher..

There is therefore no conceivable way the payment could have been "mistakenly" applied to Defendant's personal 1040 account without manual intervention. The Government offers no documentation, audit trail, or witness statement explaining how this could have happened. If, as the Government claims, its proposed IRS witness will testify that the reassignment was inadvertent, then the Government should be required to produce that agent's explanation now. Its silence on this point—despite referencing the witness in its response—underscores the implausibility of the "innocent error" theory.

## III. THE GOVERNMENT'S "NO PREJUDICE" ARGUMENT MISSTATES THE LAW

The Government mischaracterizes dismissal as dependent upon a showing of actual prejudice. The Fourth Circuit has held that dismissal is warranted where governmental conduct offends "fundamental fairness" or the "universal sense of justice." *United States v. Dyess*, 478 F.3d 224, 234 (4th Cir. 2007); *United States v. Hasan*, 718 F.3d 338 (4th Cir. 2013).

Here, prejudice is inherent: Defendant is charged with mail fraud based on a transaction that the Government's own records show to be factually false. Continuing to prosecute such a count—knowing it is unsupported by true evidence—violates due process.

## IV. THE GIGLIO LETTER CONFIRMS THE MISCONDUCT

The Government's October 20, 2025 Giglio disclosure admitted that the IRS applied the check to Defendant's personal account. That disclosure does not cure the violation; it confirms it. By the time of that letter, the Government had already used the transaction to secure an indictment. Under *Bank of Nova Scotia v. United States*, 487 U.S. 250 (1988), dismissal is appropriate where prosecutorial misconduct "substantially influences" the grand jury's decision. Presenting or maintaining a count premised on false evidence satisfies that standard.

## V. THE GOVERNMENT'S "INNOCENT ERROR" THEORY IS UNSUPPORTED AND IMPLAUSIBLE

The Government speculates that IRS employees in Utah or Missouri may have misapplied the payment, yet fails to produce any contemporaneous documentation, correspondence, or IRS explanation substantiating this narrative. The reassignment occurred between March 2023 and July 2025, during an active criminal investigation and grand jury process. That timing is no coincidence.

Even if the misapplication originated administratively, the prosecution's decision to rely on that erroneous record as evidence of "fraudulent intent" converts a bureaucratic anomaly into a constitutional violation. The Government cannot hide behind the IRS when its own charging decision perpetuated the falsehood.

## VI. GRAND-JURY TESTIMONY CONFIRMS THAT THE GOVERNMENT PRESENTED FALSE AND INCOMPLETE EVIDENCE

The grand-jury transcripts of Special Agent Dakota Kelly (IRS-CI) [DOC 88 – ATTACHMENTS 4 & 6] and Special Agent Michael Torbic (FBI) [DOC 88 – ATTACHMENTS 3 & 5] establish that Count 16—and the indictment as a whole—were obtained through inaccurate, incomplete, and misleading testimony that omitted material exculpatory facts.

**A. IRS Special Agent Kelly Confirmed That Misapplication Could Not Occur Accidentally**

Agent Kelly testified that every IRS payment received by mail must be accompanied by a Form 1040-V voucher or return identifying the taxpayer, tax year, and account number, which directs the Service Center exactly where to apply the payment. He further explained that IRS policy requires employees to deposit all payments within twenty-four hours and, if a payment is discovered more than thirty days after receipt, to follow a "discovered remittance" protocol that includes telephoning the taxpayer before deposit. When asked whether any of those procedures occurred here, Kelly admitted "No, there's not."

Thus, the Government's later suggestion that civil IRS employees "mistakenly" credited the $77,652.86 payment to Defendant's personal account is contradicted by its own witness. Because the check was accompanied by a 1040-V specifying CLIENT-3's tax liability, Defendant's identifying information would not have been attached. Kelly's testimony forecloses any claim that the credit could have been accidental or clerical in nature.

### B. The Government Possessed the IRS Transcripts but Failed to Correct False Testimony

Agent Kelly also confirmed that the prosecution team had the IRS account-transcript data as early as July 17, 2025, showing that the payment was applied to Defendant's personal account months before the grand-jury presentation. Nevertheless, neither Kelly nor any prosecutor informed the grand jury that the IRS had credited the payment to the wrong account. Instead, the grand jury was told that the checks were received by the IRS in January and March 2023 and used as proof that Defendant mailed fraudulent tax payments—a statement that was false when made.

The failure to disclose the misapplication deprived the grand jury of information essential to determining probable cause and violates the Government's duty of candor. *See Bank of Nova Scotia v. United States*, 487 U.S. 250 (1988) (dismissal appropriate where prosecutorial misconduct substantially influences the grand-jury decision).

### C. FBI Special Agent Torbic's Testimony Further Demonstrates Reckless Disregard for Truth

FBI Agent Torbic admitted that the investigation began with unverified materials from Travis Carr, who later withdrew cooperation, and that a formal investigation was not opened until November 2022. He testified that the FBI relied on copies of tax returns and checks supplied by Carr but never confirmed with the IRS that the payments were received or correctly applied. Most critically, Torbic did not disclose to the grand jury that the $77,652.86 payment was credited to Defendant's personal IRS account, a fact then already available to investigators.

In short, the grand jury received a narrative implying intentional fraud while being denied exculpatory information demonstrating that any alleged misapplication originated within the IRS, not through Defendant's conduct.

### D. The Combined Testimony Shows Structural Defect and Outrageous Misconduct

The omissions and inaccuracies in the Kelly and Torbic testimony "strike at the fundamental fairness of the process" and constitute precisely the sort of governmental misconduct condemned in *United States v. Russell*, 411 U.S. 423 (1973), and *Rochin v. California*, 342 U.S. 165 (1952).

Because the indictment was obtained through testimony the Government knew or should have known was false or incomplete, dismissal is required under the Court's supervisory authority to preserve the integrity of the judicial process. *See also United States v. Dyess*, 478 F.3d 224, 234 (4th Cir. 2007) ("Due process is offended where governmental conduct violates universal notions of justice.").

## VII. DISMISSAL IS NECESSARY TO PRESERVE JUDICIAL INTEGRITY

Federal courts have inherent supervisory authority to dismiss indictments in order to deter misconduct and preserve the integrity of judicial proceedings. *United States v. Hasting*, 461 U.S. 499 (1983); *United States v. Omni Int'l Corp.*, 634 F. Supp. 1414 (D. Md. 1986).

Because Count 16 rests on a transaction the Government knew—or should have known—was false, dismissal is warranted. Moreover, because that count was central to the alleged "scheme to defraud," dismissal of the entire indictment is necessary to restore confidence in the fairness of these proceedings.

## VIII. CONCLUSION

For the foregoing reasons, Defendant respectfully requests that this Honorable Court dismiss the indictment for outrageous government misconduct and violation of due process.

Defendant,
*Pro se*,
/s/ Paul J. Harris
Paul J. Harris
34 Orchard Rd
Wheeling, WV 26003
(304) 312-0158

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

UNITED STATES OF AMERICA,

v.

PAUL J. HARRIS,

       Defendant.

Case No.: 5:25-CR-34

## CERTIFICATE OF SERVICE

I hereby certify a true, accurate copy of the foregoing *Defendant's Reply in Support of Motion to Dismiss Due to Outrageous Government Misconduct,* was filed and served via facsimile, this 24th day of October, 2025 to the following:

Jarod J. Douglas, Esq.
Jennifer T. Conklin, Esq.
Morgan McKee, Esq.
Randolph J. Bernard, Esq.
United States Attorney's Office
PO Box 591
1125 Chapline Street, Ste. 3000
Wheeling, WV 26003
(304) 234-0110 – Fax

/s/ Paul J. Harris
Paul J. Harris

-8-